IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| GEORGE ROBINSON<br>Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY<br>1420 Concord Pkwy S<br>Concord, NC 28027<br><br>**Serve also:**<br>NATIONAL REGISTERED<br>AGENTS, INC.<br>160 Mine Lake Ct, Ste 200<br>Raleigh, NC 27615<br><br>Defendant. | **COMPLAINT FOR DAMAGES AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, George Robinson, by and through undersigned counsel, as his Complaint against Defendant Eli Lilly and Company ("Defendant" or "Eli Lilly"), states and avers the following:

## PARTIES

1. Plaintiff George Robinson is an adult resident of the city of Charlotte, county of Mecklenburg, state of North Carolina.

2. Eli Lilly and Company is a foreign corporation authorized to conduct business in North Carolina and regularly conducts business within this District. Upon information and belief, Defendant maintains substantial operations, facilities, employees, and business activities within the State of North Carolina, including the facility where Plaintiff worked located at 1420 Concord Pkwy S, Concord, NC 28027.

3. At all times relevant herein, Defendant was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and North Carolina law.

4. At all relevant times, Defendant acted through its officers, directors, managers, human resources personnel, supervisors, agents, and employees, including but not limited to Terry Danley, Muna Adhamy, and other management personnel acting within the course and scope of their employment and agency relationships with Defendant.

## JURISDICTION & VENUE

5. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the laws of the State of North Carolina.

6. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this action presents federal questions arising under the laws of the United States.

7. This Court has supplemental jurisdiction over Plaintiff's North Carolina state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same nucleus of operative facts as Plaintiff's federal claims.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events, omissions, and unlawful employment practices giving rise to Plaintiff's claims occurred within this District, Plaintiff worked for Defendant within this District, and Defendant conducts business within this District.

## ADMINISTRATIVE PREREQUISITES

9. Within 180 days of the conduct alleged below, Robinson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 430-2025-03040 against Eli Lilly and Company operating at 1420 Concord Pkwy S, Concord, NC 28027.

10. The Charge alleged discrimination based upon sex (sexual orientation), disability, and retaliation, and the claims asserted herein are reasonably related to and grew out of the EEOC investigation.

11. On or about August 20, 2026, the EEOC issued and mailed a Notice of Right to Sue letter to Robinson regarding the Charges of Discrimination brought by Robinson against Eli Lilly and Company in EEOC Agency Charge No. 430-2025-03040.

12. Robinson received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

13. Robinson has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Robinson has properly exhausted his administrative remedies.

## FACTS

15. Plaintiff, George Robinson ("Plaintiff"), is an openly gay man who was employed by Defendant, Eli Lilly and Company ("Lilly" or "Defendant"), as a Senior Operator beginning on or about March 17, 2025. At all relevant times, Plaintiff was qualified for his position and capable of performing the essential functions of his job. Plaintiff satisfactorily performed his job duties throughout his employment.

16. During onboarding, Defendant became aware of Plaintiff's sexual orientation through information Plaintiff provided to Defendant. Plaintiff's supervisors and management personnel thereafter knew Plaintiff was gay.

17. Plaintiff suffers from dyslexia, a neurological condition that substantially limits major life activities, including reading, learning, processing written information, writing, and

working. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"). In the alternative, Defendant regarded Plaintiff as disabled.

18. Despite his dyslexia, Plaintiff remained capable of performing the essential functions of his position with reasonable assistance. To compensate for his reading limitations, Plaintiff utilized an AI-assisted reader and other assistive tools to review and understand written training materials and work documentation.

19. At all relevant times, Terry Danley served as Plaintiff's direct supervisor and exercised authority over Plaintiff's daily work activities, training opportunities, and workplace conditions. Kippy Laws, Linda Fisher, and Muna Adhamy likewise exercised authority affecting Plaintiff's employment.

20. Throughout his employment, Plaintiff sought additional training opportunities, certifications, and operational access necessary to perform his duties and advance within Defendant's facility. Plaintiff communicated these requests to management and team leaders responsible for training and employee development.

21. Upon information and belief, similarly situated Senior Operators outside Plaintiff's protected classes received certifications, training opportunities, access privileges, and developmental assignments that Plaintiff repeatedly requested but did not receive.

22. On or about April 10, 2025, during a workplace conversation, Danley asked Plaintiff where he was from. When Plaintiff responded that he was from Camden, South Carolina, Danley stated that there was "nothing from Camden but queers and steers." Danley also remarked that Plaintiff did not have "horns." Plaintiff understood the comments as derogatory references to gay men and his sexual orientation.

23. Plaintiff found Danley's comments humiliating, offensive, and discriminatory. Following the incident, Plaintiff limited his interactions with Danley to work-related matters.

24. On or about April 14, 2025, Danley confronted Plaintiff regarding Plaintiff's reduced interaction with him. Plaintiff explained that Danley's comments made him uncomfortable as a gay man and that he considered the remarks inappropriate.

25. During that discussion, Danley referenced information Plaintiff had disclosed during onboarding, reinforcing Plaintiff's belief that Danley knew of Plaintiff's sexual orientation when he made the derogatory comments.

26. During the same discussion, Plaintiff informed Danley that he was uncomfortable using another employee's identification badge to gain access to restricted areas because he believed such conduct violated company policies and regulatory requirements.

27. Rather than address Plaintiff's concerns, Danley threatened Plaintiff with disciplinary action and informed Plaintiff that he could issue a write-up for insubordination if he chose to do so. Danley did not identify any legitimate policy violation by Plaintiff.

28. On or about April 15, 2025, fearing discrimination and retaliation, Plaintiff reported Danley's discriminatory comments, threats, and conduct to Laws. Plaintiff also reported concerns regarding workplace compliance and safety practices, including the improper use of employee identification badges to obtain access to restricted areas.

29. Plaintiff further advised Laws that he feared retaliation if he reported Danley's conduct. Laws acknowledged Plaintiff's concerns and informed Plaintiff that retaliation was prohibited by company policy.

30. Laws advised Plaintiff that the nature of his complaint required submission of an internal ethics complaint and reported Plaintiff's concerns to Human Resources and Defendant's

ethics department on or about April 15, 2025. Defendant thereafter initiated a formal investigation into Plaintiff's complaints.

31. Shortly after Plaintiff's complaint, Defendant directed Plaintiff to report to an individual identified as "Kal," who, upon information and belief, worked within Danley's chain of command and maintained a close working relationship with Danley.

32. Thereafter, Adhamy contacted Plaintiff and conducted an investigation into Plaintiff's complaints of discrimination and retaliation. During the investigation, Adhamy specifically asked Plaintiff whether he feared retaliation because of his complaint. Plaintiff advised that he did and explained that he was experiencing significant stress, anxiety, and concern arising from the complaint process and the possibility of retaliation.

33. During the investigation, Plaintiff informed Adhamy that he suffered from dyslexia, had difficulty understanding portions of Defendant's written training materials, and utilized an AI reader to assist him in reviewing and comprehending written content. Plaintiff further explained that he required assistance in navigating Defendant's extensive written training requirements because of his dyslexia. Defendant thereby obtained actual knowledge of Plaintiff's disability before terminating his employment.

34. On or about April 30, 2025, Plaintiff requested permission to continue utilizing an AI-assisted reader and requested assistance, tools, and accommodations to enable him to read, process, and understand Defendant's written training materials and electronic learning content. ("Plaintiff's Accommodation Request").

35. Plaintiff's Accommodation Request was reasonable and would not have imposed an undue hardship upon Defendant.

36. Despite having actual knowledge of Plaintiff's disability and accommodation needs, Defendant failed to engage in a meaningful interactive process, failed to explore available accommodations, failed to discuss alternatives with Plaintiff, and failed to provide any reasonable accommodation for Plaintiff's dyslexia.

37. On or about May 2, 2025, Plaintiff followed up with Human Resources regarding both the discrimination investigation and his accommodation request. During that discussion, Plaintiff again informed Fisher that he suffered from dyslexia, experienced difficulty processing written materials, utilized assistive technology, and required assistance understanding training documents.

38. Rather than engage in a discussion regarding accommodations, Linda Fisher shifted the discussion to attendance concerns and allegations that Plaintiff had falsified training records. Plaintiff immediately denied falsifying any records and requested supporting evidence.

39. Plaintiff explained that Defendant's electronic training systems frequently required employees to revisit previously reviewed training materials and that completion-time calculations did not necessarily reflect whether a user had previously reviewed the materials. Plaintiff denied engaging in any intentional misconduct.

40. Plaintiff further explained that Defendant's electronic learning platform routinely displayed previously completed standard operating procedures ("SOPs") and training materials and required employees to revisit content previously reviewed. Plaintiff advised Defendant that the training data relied upon by Defendant did not accurately reflect whether material had already been reviewed and did not establish intentional falsification of records.

41. Upon information and belief, Defendant did not conduct a meaningful review of Plaintiff's explanations concerning the operation of the electronic learning platform, his prior

review of training materials, or the effect of his dyslexia before deciding to terminate his employment.

42. Plaintiff further advised Defendant that his dyslexia affected the manner in which he processed written materials and reiterated his need for accommodations and continued use of assistive technology. Defendant nevertheless failed to engage in any meaningful accommodation process.

43. Upon information and belief, individuals within Danley's supervisory chain participated in identifying, reviewing, reporting, or escalating the alleged training-record issue only after Plaintiff complained of discrimination, reported retaliation concerns, and requested accommodations.

44. Prior to Plaintiff's complaint of discrimination and accommodation request, Defendant had never accused Plaintiff of falsifying records, never informed Plaintiff that his employment was in jeopardy, and never issued corrective action concerning attendance.

45. On or about May 6, 2025, Defendant advised Plaintiff that the investigation into his complaint had concluded and represented that it would follow up regarding the results.

46. The following day, on or about May 7, 2025, Defendant terminated Plaintiff's employment. Defendant informed Plaintiff that he was being discharged for alleged falsification of training records.

47. Defendant's written separation notice specifically stated that Plaintiff was being terminated for "Misconduct" because Defendant allegedly determined that Plaintiff had falsified training records. The separation notice did not identify attendance, insubordination, performance deficiencies, or any other reason for Plaintiff's discharge.

48. Following his termination, Plaintiff contacted Adhamy and informed her that he had been discharged. Adhamy advised Plaintiff that she had not been informed of the termination decision and further advised Plaintiff that retaliation-related concerns remained under investigation.

49. Plaintiff understood Adhamy's statements to mean that Defendant terminated his employment before concerns regarding retaliation had been fully investigated or resolved and while issues relating to his discrimination complaint remained under active review.

50. Defendant terminated Plaintiff while Plaintiff's complaint of discrimination, retaliation concerns, disability disclosures, and accommodation requests were recent, pending, known to Defendant, and intertwined with the training-related concerns Defendant later relied upon as the sole basis for termination.

51. The close temporal proximity between Plaintiff's protected complaints, his disclosure of dyslexia, his accommodation requests, Defendant's investigation, Defendant's failure to accommodate, and his termination supports a reasonable inference that Defendant's stated reason for discharge was false, pretextual, not honestly believed, or otherwise used to conceal unlawful discrimination and retaliation.

52. Upon information and belief, Defendant provided similarly situated employees outside Plaintiff's protected classes with training opportunities, certifications, developmental assignments, operational access, and workplace support that were denied to Plaintiff.

53. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, anxiety, humiliation, embarrassment, damage to reputation, mental anguish, loss of professional confidence, and other economic and non-economic damages, and will continue to suffer such damages in the future.

**COUNT I: SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF TITLE VII (42 U.S.C. § 2000E ET SEQ.)**

54. Plaintiff restates each and every prior paragraph of this Complaint as if fully set forth herein.

55. Plaintiff is a member of a protected class because he is a gay male.

56. Defendant knew Plaintiff's sexual orientation during his employment.

57. Plaintiff was qualified for his position and satisfactorily performed the essential functions of his job.

58. Plaintiff was subjected to discriminatory comments concerning his sexual orientation, including comments by Terry Danley referring to "queers and steers."

59. Plaintiff was denied training opportunities, certifications, assignments, support, and access privileges provided to similarly situated employees outside his protected class.

60. Defendant treated Plaintiff less favorably than similarly situated employees outside his protected class.

61. Defendant terminated Plaintiff's employment.

62. Plaintiff's sexual orientation was a motivating factor in Defendant's decision to subject him to adverse employment actions and terminate his employment.

63. Defendant's stated reason for terminating Plaintiff was false, pretextual, not honestly believed, or otherwise used to conceal unlawful discrimination.

64. Defendant acted intentionally, maliciously, recklessly, and/or with deliberate indifference to Plaintiff's federally protected rights.

65. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

**COUNT II: RETALATION IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e et seq.)**

66. Plaintiff restates each and every prior paragraph of this Complaint as if fully set forth herein.

67. Plaintiff engaged in protected activity when he complained about sexual-orientation discrimination, discriminatory comments, workplace harassment, and retaliation to Kippy Laws, Human Resources, Defendant's ethics department, and investigator Muna Adhamy.

68. Defendant had actual knowledge of Plaintiff's protected activity.

69. Plaintiff repeatedly expressed concerns that he would be retaliated against for reporting discrimination.

70. After Plaintiff engaged in protected activity, Defendant increased scrutiny of Plaintiff, escalated concerns regarding alleged training issues, and subjected Plaintiff to adverse employment actions.

71. Defendant terminated Plaintiff's employment on May 7, 2025.

72. The close temporal proximity between Plaintiff's protected activity and his termination supports an inference of retaliation.

73. Defendant's proffered reason for termination was false, pretextual, not honestly believed, or otherwise used to conceal unlawful retaliation.

74. Defendant retaliated against Plaintiff because he opposed discrimination and participated in protected activities under Title VII.

75. Defendant acted intentionally, maliciously, recklessly, and/or with deliberate indifference to Plaintiff's federally protected rights.

76. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA (42 U.S.C. § 12112)

77. Plaintiff restates each and every prior paragraph of this Complaint as if fully set forth herein.

78. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

79. In the alternative, Defendant regarded Plaintiff as disabled.

80. Plaintiff was capable of performing the essential functions of his position with or without reasonable accommodation.

81. Defendant had actual knowledge of Plaintiff's dyslexia before terminating his employment.

82. Plaintiff disclosed his dyslexia to Defendant's investigators, Human Resources personnel, and decisionmakers before his termination.

83. Defendant subjected Plaintiff to adverse employment actions and terminated his employment because of his disability, perceived disability, need for accommodation, or a combination thereof.

84. Defendant's stated reason for termination was false, pretextual, not honestly believed, or otherwise used to conceal unlawful disability discrimination.

85. Defendant acted intentionally, maliciously, recklessly, and/or with deliberate indifference to Plaintiff's federally protected rights.

86. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

**COUNT IV: FAILURE TO ACCOMDATE IN VIOLATION OF THE ADA (42 U.S.C. § 12112)**

87. Plaintiff restates each and every prior paragraph of this Complaint as if fully set forth herein.

88. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

89. Defendant had actual knowledge of Plaintiff's dyslexia.

90. Plaintiff requested reasonable accommodations, including tools, assistance, and support to assist him with reading, understanding, and completing Defendant's training requirements and written materials.

91. Plaintiff's requested accommodations were reasonable.

92. Plaintiff's requested accommodations would not have imposed an undue hardship on Defendant.

93. Defendant failed to engage in a meaningful interactive process.

94. Defendant failed to discuss accommodation options with Plaintiff.

95. Defendant failed to provide reasonable accommodations to Plaintiff.

96. Defendant's failure to accommodate Plaintiff's disability violated the ADA.

97. Defendant denied Plaintiff the equal opportunity to perform and retain his position by failing to provide reasonable accommodations for his dyslexia and by failing to engage in the interactive process.

98. Defendant acted intentionally, maliciously, recklessly, and/or with deliberate indifference to Plaintiff's federally protected rights.

99. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

**COUNT V: RETALIATION IN VIOLATION OF THE ADA (42 U.S.C. § 12203)**

100. Plaintiff restates each and every prior paragraph of this Complaint as if fully set forth herein.

102. Plaintiff engaged in protected activity by disclosing his disability and requesting reasonable accommodations.

103. Defendant had actual knowledge of Plaintiff's protected activity.

104. Shortly after Plaintiff disclosed his disability and requested accommodation, Defendant escalated allegations regarding attendance and training records and terminated Plaintiff's employment.

105. The temporal proximity between Plaintiff's accommodation requests and his termination supports an inference of retaliatory motive.

106. Defendant terminated Plaintiff because he requested accommodation and asserted rights protected by the ADA.

107. Defendant's stated reason for termination was false, pretextual, not honestly believed, or otherwise used to conceal unlawful retaliation.

108. Defendant acted intentionally, maliciously, recklessly, and/or with deliberate indifference to Plaintiff's federally protected rights.

109. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

**COUNT VI: WRONGFUL DISCHARGE IN VIOLATION OF NORTHCAORLINA PUBLIC POLICY (N.C. Gen. Stat. § 143-422.2)**

110. Plaintiff restates each and every prior paragraph of this Complaint as if fully set forth herein.

111. North Carolina public policy prohibits discrimination and retaliation in employment and embodies the public policy set forth in the North Carolina Equal Employment Practices Act.

112. Defendant terminated Plaintiff because of his sexual orientation, because of his disability, because he opposed unlawful discrimination, because he requested reasonable accommodations, because he complained of retaliation, or because of a combination of those protected characteristics and activities.

113. Defendant's actions violated the strong public policy of North Carolina as expressed in the North Carolina Equal Employment Practices Act and related anti-discrimination principles.

114. Defendant's stated reason for termination was false, pretextual, not honestly believed, or otherwise used to conceal unlawful conduct.

115. As a direct and proximate result of Defendant's wrongful discharge, Plaintiff suffered lost wages, lost benefits, emotional distress, and other damages.

116. Defendant's conduct was willful, intentional, malicious, reckless, and/or undertaken with conscious disregard for Plaintiff's protected rights.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff George Robinson respectfully requests that this Court enter judgment in his favor and against Defendant Eli Lilly and Company, and award the following relief:

A. Declare that Defendant's conduct violated Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the public policy of the State of North Carolina;

B. Award Plaintiff all lost wages, back pay, lost earnings, lost benefits, lost compensation, and all other economic losses suffered as a result of Defendant's unlawful conduct;

C. Award Plaintiff front pay in lieu of reinstatement or, alternatively, reinstatement to a comparable position with full seniority, benefits, and privileges of employment;

D. Award Plaintiff compensatory damages for emotional distress, humiliation, embarrassment, inconvenience, mental anguish, loss of enjoyment of life, damage to reputation, and other non-economic injuries resulting from Defendant's unlawful conduct;

E. Award Plaintiff compensatory damages available under Title VII and the Americans with Disabilities Act in an amount to be determined by the jury;

F. Award Plaintiff punitive damages under Title VII and the Americans with Disabilities Act because Defendant acted intentionally, maliciously, recklessly, and with deliberate indifference to Plaintiff's federally protected rights;

G. Award Plaintiff all damages recoverable under North Carolina law for wrongful discharge in violation of public policy;

H. Award prejudgment interest and post-judgment interest as permitted by law;

I. Award Plaintiff his reasonable attorneys' fees, litigation expenses, expert witness fees, costs, and disbursements pursuant to Title VII, the Americans with Disabilities Act, and other applicable law;

J. Order Defendant to expunge, remove, or correct any reference in Plaintiff's personnel records stating or suggesting that Plaintiff engaged in misconduct or falsified training records;

K. Award Plaintiff all equitable relief necessary to make him whole and to remedy the effects of Defendant's unlawful conduct;

L. Award such other and further legal or equitable relief as this Court deems just and proper.

Respectfully submitted this the 18th day of November, 2026.

/s/*M. Janelle Lyons*
M. Janelle Lyons (35421)
**Spitz, The Employee's Law Firm**
6135 Park South Drive
Suite 590
Charlotte, NC 28210
Phone: (980) 301-0755
Fax: (216) 291-5744
Email: janelle.lyons@spitzlawfirm.com
Attorneys For Plaintiff George Robinson

**JURY DEMAND**

Plaintiff George Robinson demands a trial by jury by the maximum number of jurors permitted.

/s/*M. Janelle Lyons*
M. Janelle Lyons (35421)
**Spitz, The Employee's Law Firm**